```
IN THE UNITED STATES DISTRICT COURT FOR THE
         EASTERN DISTRICT OF OKLAHOMA
```

```
JAY TONEY,                          )
                                    )
         Plaintiff,                 )
                                    )
v.                                  )   No. CIV-06-455-FHS
                                    )
INDEPENDENT SCHOOL DISTRICT         )
NO. I-48 OF HUGHES COUNTY           )
a/k/a CALVIN PUBLIC SCHOOLS,        )
and the SUPERINTENDENT AND          )
SCHOOL BOARD MEMBERS, in            )
their official capacity,            )
                                    )
         Defendant.                 )
```

**OPINION AND ORDER**

This is an action brought by Plaintiff, Jay Toney ("Toney"), a career teacher employed by Defendant, Independent School District No. I-48 a/k/a Calvin Public Schools ("School District"), for alleged violations of his rights under the Fourteenth Amendment of the United States Constitution and Oklahoma's Open Meeting Act in connection with the School District's non-renewal of his employment contract for the 2006-2007 school year. Toney has also asserted his statutory right to a trial *de novo* under Oklahoma's Teacher Due Process Act, Okla. Stat. tit. 70 §6-101.27, with respect to the decision by the Board of Education for Calvin Schools ("School Board") to not reemploy him. On December 5, 2006, the Court conducted the statutorily mandated trial *de novo* on Toney's Teacher Due Process Act claim. The Court heard and received the evidence presented by the parties and has afforded them the opportunity to present proposed findings of fact and conclusions of law. Having fully considered all the submissions of the parties, the Court enters these findings of fact and conclusions of law in accordance

1

with the requirements of Okla. Stat. tit. 70 §6-101.27(D) and (E).

**FINDINGS OF FACT**

1. Toney, a career teacher within the School District, taught science classes for grades seven through twelve. Toney had been employed in such capacity for four years when his employment was not renewed by the School District for the 2006-2007 school year.

2. On February 9, 2006, Toney was given a Corrective Action Plan and Admonishment ("Plan") by his principal, Curtis Fitzgerald ("Fitzgerald"). In that Plan, Toney was informed that "continued performance on the level now being performed would result in a recommendation for employment termination." The plan listed eight areas of deficient performance by Toney: (1) failure to be engaged in instruction, (2) failure to provide appropriate supervision, (3) failure to enforce student discipline rules, (4) failure to comply with teacher conduct rules, (5) failure to be at duty station on time, (6) failure to properly plan for class, (7) failure to maximize instruction and keep students on task during the entire class period, and (8) failure to comply with administrative directives. Specific examples of deficient performance were outlined under each of the eight categories. Among the deficiencies cited were Toney's use of his classroom computer to play card games during class time on four different occasions, his reporting to work late, his failure to supervise students in the gym, his decision to allow eating and drinking in his classroom, his use of tobacco products during class time, and his failure to keep students in their seats during instructional time.

3. The Plan's admonishment informed Toney that his failure to comply with the directives for improvement "will result in a

2

recommendation for employment termination." Toney was provided with thirteen directives which were to be implemented immediately; (1) supervise his students at all times, (2) refrain from computer use during class time unless for a reason previously approved by Fitzgerald and refrain from any use of the computer to play card games or other entertainment, (3) enforce all student behavior rules, (4) observe all employee behavior rules, (5) serve as an appropriate role model for students, (6) maximize class time for instruction, (7) properly use preparation period to develop lesson plans, (8) develop lesson plans and conduct class according to those plans, (9) report to work no later than 7:40 a.m., (10) comply with all procedural requirements when he is to absent or late, (11) promptly grade and return homework, (12) maintain a clean and organized room, and (13) promptly comply with all administrative directives.

4. On February 8, 2006 – the day before Toney received the Plan – Fitzgerald conducted a prearranged classroom evaluation of Toney during his sixth period freshman biology class. Other than noting that Toney's room "is in total disarray. (a wreck) Books, papers etc. everywhere", the evaluation contained in Fitzgerald's handwritten notes (Defendant's Exhibit No. 6) was generally positive regarding Toney's teaching methods and his ability to engage his students. Toney's February 9, 2006, written Evaluation Record (Defendant's Exhibit No. 7) prepared by Fitzgerald repeated the positive aspects of Toney's teaching methods noted in Fitzgerald's handwritten notes, but it also contained non-satisfactory marks for Toney in several categories and it listed areas of needed improvement – all as set forth in the Plan which was attached to the Evaluation Record. Fitzgerald testified the input for the February 9, 2006, Evaluation Record was gathered from his observations of Toney over the course of the entire school

3

year, and was not limited to his observations from his February 8, 2006, prearranged classroom visit.

5. Despite the detailed directives of the February 9, 2006, Plan, Toney failed to take the necessary corrective action to comply with the Plan's directives. Toney was notified of his non-compliance by Fitzgerald and Jon Tuck ("Tuck"), the School District's Superintendent, through the issuance of a written Recommendation for Non-Reemployment delivered to Toney on March 27 2006. Toney was notified that Fitzgerald and Tuck were recommending to the School Board that Toney not be reemployed due to his failure to comply with the directives contained in the February 9, 2006, Plan. In particular, Toney's nonreemployment was recommended based on Toney's (1) failure to supervise students with respect to two altercations involving students and incidents of students sitting on top of desks, (2) failure to cease using his classroom computer to play games on six different occasions, (3) failure to enforce all student behavior rules as evidenced by students playing video games on television, sitting of top of desks, and wearing ball caps during class, (4) failure to comply with teacher behavior rules by drinking in class room as evidenced by cups and cans on his desk on three occasions, (5) failure to maximize class time for instruction and implement lessons plans through instruction as evidenced by students either sitting on top of desks or playing video games while no instruction was taking place on seven different occasions, and (6) failure to keep his room clean by allowing eating and drinking in class. In a written notice, Toney was informed of his right to a pre-termination hearing on the recommendation for his nonreemployment and the process to be followed at such hearing.

6. On May 2, 2006, the School Board held a special meeting to

consider the recommendation for Toney's nonreemployment. At the conclusion of the meeting the School Board voted 5-0 to accept the recommendation of nonreemployment of Toney. The stated reasons asserted by the School Board were willful neglect and repeated negligence in the performance of his duty. As underlying facts supporting its decision, the School Board cited Toney's "[r]epeated improper use of computers after being otherwise instructed in an admonishment and corrective plan dated February 8 [sic], 2006" and his "failure to supervise students as directed." Defendant's Exhibit No. 22, p. 2.

7. Toney's awareness that the use of classroom computers was limited to educational purposes predates the February 9, 2006, Plan. On May 1, 2003, Toney was a probationary teacher when he was given a Plan for Improvement which cited "playing games on the computer during class" as a deficiency in his teaching performance. Defendant's Exhibit No. 18, p. 1. In that May 1, 2003, document, Toney was instructed that he should "not play games on the computer when [he] should be teaching [his] class." Id. at p. 2. Additionally, on August 30, 2005, Toney, along with all other teachers, received a memorandum from Fitzgerald advising them of computer problems arising from "game sites on the Internet." Defendant's Exhibit No. 1. The teachers were informed that "[y]our computer is for educational purposes." Id. Toney also executed a Staff Internet Use Agreement Form on February 2, 2006, which represents his understanding and agreement that he was "not to use computers at school unless the use is directly related to the duties of [his] position" and that any violation of this rule may result in "school disciplinary action (including written reprimand, admonishment and possible recommendation for termination)." Defendant's Exhibit No. 5.

5

8. During the period between the March 27, 2006, written Recommendation for Non-Reemployment and the School Board's May 2, 2006, decision to nonreemploy, a computer software program was installed on Toney's computer by Jonathon Mason ("Mason"), a computer maintenance worker under contract with the School District. This software enabled the School District to monitor Toney's computer usage. The applications log (Defendant's Exhibit No. 12) establishes numerous instances of games being accessed on Toney's computer between April 4, 2006, and May 22, 2006. Additionally, Mason testified he observed Toney using the computer for card games in February and March of 2006 when he would be in Toney's classroom for general maintenance of the classroom computers.

9. Toney testified at the hearing in this matter that he doesn't dispute his use of the computer for purposes of playing games as alleged in the Recommendation for Nonreemployment. In particular, he didn't dispute the testimony of Joyce Searcy ("Searcy"), a secretary for the School District, who testified that on March 1, 2006, she went to Toney's first period class to hand out progress reports and observed Toney at his desk playing Solitaire on his computer. Searcy also stated that on that occasion the students were talking and sitting on their desks.

10. Toney testified that he made a choice to play cards and that it was "a bad choice." Toney testified that despite taking the February 9, 2006, Plan to heart, he made this choice to play cards on the computer. He stated he was "disheartened" after the recommendation for non-renewal and believed that his conduct was consistent with "what everyone was doing." Toney believed he was able to monitor his class and his teaching responsibilities while playing cards on his computer because he would "shut the computer

down when the kids needed help." Toney also testified that he knew students were not supposed to bring food and drink into the classroom, but that he made the decision to allow food and drink during first period as an incentive or aid to help them learn. Finally, Toney does not dispute the evidence that on several occasions his students were either sitting on their desks or on the floor during class time.

11. Two parents of former students of Toney's testified that Toney was an effective teacher who was professional in manner.

## **CONCLUSIONS OF LAW**

1. The Court has supplemental jurisdiction over Toney's trial *de novo* claim brought under Oklahoma's Teacher Due Process Act, Okla. Stat. tit. 70 §6-101.27. 28 U.S.C. § 1367(a). Venue is proper in this district. 28 U.S.C. § 1391(b).

2. A "career teacher" under Oklahoma law is one "who has completed three (3) or more consecutive complete school years in such capacity in one school district under a written teaching contract." Okla. Stat. tit. §6-101.3(4). Toney's four years with the School District qualifies him as a career teaching entitled to the protections of Oklahoma's Teacher Due Process Act.

3. Under Okla. Stat. tit. 70 §6-101.27, a career teacher such as Toney is entitled to a trial *de novo* on a school board's decision to non-renew that teacher's employment contract for the following school year. See Okla. Stat. tit. §6-101.3(3)("'Nonreemployment' means the nonrenewal of an administrator's or teacher's contract upon expiration of the contract."). The burden of proof rests with the school board "to

establish de novo that the teacher's . . . nonreemployment is warranted." Okla. Stat. tit. §6-101.27(D). The trial *de novo* shall be conducted as a nonjury trial and the court "shall determine de novo all issues of fact and law necessary for full adjudication of the dispute at the trial." Id. The Court shall not give any "preclusive effect to findings of fact or determinations of the board" with regard to any of the issues related to adequacy of the decision to non-renew the teacher. Id. Following the trial *de novo,* the Court shall enter a judgment which either (1) orders the school board to reinstate the teacher with employment status and benefits or (2) sustains the decision of the school board to not reemploy the teacher.

4. Grounds for nonreemployment of career teachers under Oklahoma's Teacher Due Process Act include willful neglect of duty and repeated negligence in the performance of duty. Okla. Stat. tit. §6-101.22(A)(1) and (2). Before an administrator can make a recommendation for a career teacher's nonreemployment on any of the grounds listed under §6-101.22, the administrator must "(1) [a]dmonish the teacher, in writing, and make a reasonable effort to assist the teacher in correcting the poor performance or conduct; and (2) [e]stablish a reasonable time for improvement, not to exceed two (2) months, taking into consideration the nature and gravity of the teacher's performance or conduct." Okla. Stat. tit. §6-101.24(A)(1) and (2).

5. The February 9, 2006, Plan provided to Toney outlined, in detail, the deficiencies in Toney's performance as required under § 6-101.24(A)(1). The Plan further directed Toney to take corrective action to remedy these deficiencies. As compliance with these directives was solely under the control of Toney given the nature of the deficiencies, i.e. use of computer to play games,

8

etc., the admonishment and directives in the Plan constitute reasonable efforts on the part of the School District's representative, Tuck, to assist Toney with his efforts at compliance. See Childers v. Independent School District No. 1 of Bryan County, 645 P.2d 992, 995(Okla. 1982)(reasonable efforts to assist teacher found upon a determination that a teacher's failure to maintain discipline in class and failure to work with administrators and other teachers are the type of deficiencies which "do not lend themselves to assistance or to a program of improvement"). The Plan also complied with the "reasonable time for improvement" provision of §6-101.24(A)(2). Although the Plan directed "immediate" implementation of its directives and did not specify a particular time frame within the two-month period set forth under §6-101.24(A)(2), the requirement of "immediate" implementation constitutes a technical violation of the statutory provision given the fact that Tuck did not issue his recommendation for nonrenewal until March 27, 2006 - some six weeks after the February 9, 2006, Plan. See House v. Independent School District I-29 of Muskogee County, 939 P.2d 1127, 1128-31 (Okla. 1997)(failure to specify a reasonable time for improvement constitutes technical noncompliance with Oklahoma's Teacher Due Process Act as three months lapsed between plan of improvement and recommendation for dismissal).

6. In order for the actions of a career teacher to constitute "willful neglect of duty" there must be a showing of a knowing and purposeful violation. Childers, 645 P.2d at 995. Oklahoma's Teacher Due Process Act does not require a showing that an act be done with "evil intent and with purpose to do harm" before a career teacher can be dismissed or nonreemployed for "willful neglect of duty." Id.

9

7. Toney's admitted and proven use of his classroom computer for non-pedagogical purposes constitutes willful neglect of his duties as a teacher for the School District. Toney knowingly and purposefully failed to conform his conduct to the directives issued by the School District regarding computer usage. The record also establishes Toney's repeated negligence in the performance of his duties with respect to the students' conduct in his classroom. The record establishes instances of students sitting on desks and on the floor and students eating and drinking in Toney's classroom. This behavior violated school policies and Toney was directed to take corrective action to assure that his students' conduct conformed to such policies. The post-admonishment instances of such conduct as admitted by Toney and testified to by Searcy, establish, at the very least, Toney's repeated negligence in the performance of his duties.

8. The Court's function in the trial *de novo* procedure set forth under section 6-101.27 is to determine if the School Board has established that Toney's "nonreemployment is warranted." The Court must necessarily determine if one or more of the grounds for nonreemployment set forth under section 6-101.22(A) has been established. Included within this calculus is an assessment of Toney's capabilities and effectiveness as a teacher as these factors relate to the specific statutory ground asserted for nonreemployment. Based on the foregoing findings and conclusions, the Court finds Toney's nonreemployment is warranted upon the grounds of willful neglect of duty and repeated negligence in the performance of his duties.

9. Having so found, the Court is not vested with any discretionary authority to modify the decision of the School Board to nonrenew Toney's employment. The decision of the School Board

must be "sustained" under section 6-101.27(D)(2) upon a finding of one or more of the statutory grounds. The discretionary language of section 6-101.22(A) ("a career teacher may be dismissed or not reemployed for . . . 1. Willful neglect of duty; 2. Repeated negligence in performance of duty . . .") affords the School District and its supervisory officials, not the Court, with discretion regarding the initial decision of whether to initiate dismissal or nonreemployment procedures under the Teacher Due Process Act. Thus, mitigating evidence presented by Toney regarding the opined disparate treatment of him in relation to other teachers does not enter into the calculus of the Court's determination of whether Toney's nonreemployment is warranted based on one or more of the statutory grounds. Moreover, even assuming the Court is in error in its interpretation and it does, in fact, have discretion to either modify the School Board's decision or reinstate Toney in the face of the established statutory grounds for nonreemployment, the Court would decline to do so in this case. School districts must be able to enforce their institutional procedures in order to achieve their educational objectives. Teachers and other school district employees who disregard the properly issued, pedagogically-based mandates of a school district do so at their own peril.

10. Toney's nonreemployment for the 2006-2007 school year is warranted upon the grounds of willful neglect of duty and repeated negligence in the performance of his duties. The decision of the School Board to not reemploy Toney is therefore sustained.

It is so ordered this 5th day of January, 2007.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma

11